**JS- 6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    vs.<br><br>GUY SCOTT GRIFFITHE et al.,<br><br>    Defendants. | Case No. SA CV 20-00124-DOC (JDE)<br><br><br><br><br><br>ORDER GRANTING MOTION FOR FINAL JUDGMENT AS TO ALL DEFENDANTS [84] |

JS- 6

Before the Court is Plaintiff Security and Exchange Commission's ("SEC") Motion for Final Judgment ("Motion" or "Mot.") (Dkt. 84). The Court heard oral arguments on October 22, 2021. For the reasons described below, the Court GRANTS Plaintiff's Motion.

## I. BACKGROUND

Guy Scott Griffithe ("Griffithe") and Robert William Russell ("Russell") defrauded 25 investors of approximately $4.85 million through unregistered offerings of securities in SMRB, LLC ("SMRB"), a legal cannabis company in Washington State. Mot. at 1. SMRB was never profitable, and investors received money in part from other investors' funds. *Id.* at 5. Griffithe misappropriated just under $2.4 million to fund his business interests, pay personal expenses, and buy sports cars; Russell used investor money to finance a yacht purchase and pay other vendors. *Id.* at 1. The SEC has reconstructed the flows of investor money, as Griffithe and Russell did not keep contemporaneous records. *Id.* at 4-5.

The SEC filed its complaint on January 21, 2020 (Dkt. 1). Griffithe and Russell reached bifurcated settlements with the SEC, under which the Court entered Consent Judgments enjoining defendants from further violating federal securities laws (Dkts. 59, 72). The Judgments provided that the Court would decide monetary relief based on a subsequent motion, and provided that the allegations of the Complaint were to be accepted as true and Defendants were precluded from arguing that they did not violate federal securities laws.

The SEC filed the instant Motion on July 12, 2021. Griffithe opposed ("Griffithe Opp'n") (Dkt. 93) and Russell opposed ("Russell Opp'n") (Dkt. 94) on August 13, 2021. Russell replied to Griffithe's Opposition ("Russell Reply") on August 26, 2021 (Dkt. 108). The SEC replied ("SEC Reply") on August 27, 2021 (Dkt. 110).

## II. LEGAL STANDARD

"[A] district court has broad equity powers to order the disgorgement of ill-gotten gains obtained through the violation of the securities laws. Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making

them unenforceable." *SEC v. Platforms Wireless*, 617 F.3d 1072, 1096 (9th Cir. 2010) (quoting *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998)). Disgorgement forces a defendant to surrender his unjust enrichment, thus eliminating the incentive to violate securities laws. *SEC v. Rind*, 991 F.2d 1486, 1491, 1493 (9th Cir. 1993). In a motion for disgorgement, the SEC must only present evidence of a "reasonable approximation" of the defendants' ill-gotten gains. *Platforms Wireless*, 617 F.3d at 1096. The burden then shifts to defendants to "demonstrate that the disgorgement figure was not a reasonable approximation." *Id.* (quoting *SEC v. First City Financial Corp., Ltd.,* 890 F.2d 1215, 1232 (D.C. Cir. 1989)). Courts have created this burden-shifting system because defendants are more likely to have access to relevant evidence, and "the risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Id.*

Beyond disgorgement, Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act authorize district courts to assess civil penalties against persons who violate federal securities laws. The highest level of penalties, the "third tier," are available when the securities law violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement [and] such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial loss to other persons." 15 U.S.C. §§ 77t(d)(2)(c), 78u(d)(3)(B)(iii). A court may impose a penalty of a fixed amount multiplied by the number of "violations," *SEC v. Opulentica, LLC*, 479 F. Supp. 2d 319, 331 (S.D.N.Y., 2007); *SEC v. Kenton Cap., Ltd.*, 69 F. Supp. 2d 1, 17 n. 15 (D.D.C. 1998), or a penalty equal to a defendant's gross pecuniary gain, *SEC v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d 1185, 1192-93 (D. Nev. 2009).

### III. DISCUSSION

#### A. Disgorgement

In general, the parties do not disagree on the net amount of gain subject to disgorgement, but Defendants disagree on how much is appropriate to deduct as legitimate business expenses.

Here, the SEC has set forth a reasonable approximation of Griffithe's ill-gotten gains of $2,093,336.67. That amount includes a downward revision of just under $300,000, which is deducted for legitimate business expenditures and investor distributions based on Griffithe's late-filed documentation. Mot. at 2. Many of the other adjustments sought by Griffithe are based on duplications of existing transfers or represent fraud proceeds. *Id.* at 3-4. Moreover, any loan repayments Griffithe made cannot be deducted, as those loans were taken out for the purpose of facilitating the fraud on investors. As such, repayments are not legitimate business expenses. In addition to Griffithe's new documentation, the SEC identified one additional legitimate payment of rent for SMRB, which it subtracted from its prior calculation. The SEC's Motion for disgorgement as to Griffithe is therefore GRANTED. The SEC calculated pre-judgment interest at $336,194.77. The total combined amount of disgorgement and pre-judgment interest owed by Griffithe is thus $2,429,531.44.

The SEC has also set forth a reasonable approximation of Russell's ill-gotten gains of $275,153.90, which it adjusted after receiving late input from Russell after filing its Motion. That amount represents his payments for the yacht and excludes legitimate SMRB business expenses that Russell was able to document. *See* Mot. at 9. The burden then shifts to Russell to demonstrate that the amount set forth by the SEC is unreasonable. In his Opposition, Russell produced several invoices that were not previously provided to the SEC, purporting to show legitimate expenses of several hundred thousand dollars. The SEC took those it could verify into account and revised its requested disgorgement figure accordingly. However, the yacht payments cannot be plausibly characterized as legitimate business expenses, regardless of Russell's argument that the boat was used to house employees. And the $180,000 that Russell paid to Griffithe on November 18, 2016, has no records demonstrating its purpose and therefore cannot be used to offset the disgorgement figure. The SEC's Motion for disgorgement as to Russell is therefore GRANTED. The Judgment specifically provides for the prejudgment interest formula, and the SEC calculated pre-judgment interest in accordance with that formula, resulting in a total pre-judgment interest amount of $44,190.38. The total combined amount of disgorgement and pre-judgment interest owed by Russell is thus $319,344.28.

### B. Civil penalties

The SEC here seeks third-tier civil penalties against both Defendants. The Court finds that such penalties are appropriate here given the degree of fraud and deceit and substantial investor losses. Here, the SEC seeks a penalty equal to the disgorgement obligation it calculated before allowing for the Defendants' late-filed expenses, for a total of $575,398.93 for Russell and $2,385,325.11 for Griffithe. Mot. at 15.

While the Supreme Court's *Liu* decision requires disgorgement to be based on a defendant's *net* profits, *Liu v. SEC*, 140 S. Ct. 1936, 1950 (2020), there is no corresponding requirement for civil penalty amounts. To the contrary, Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act authorize courts to impose penalties based on "the *gross* amount of pecuniary gain." (emphasis added) *See SEC v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d 1185, 1192-93 (D. Nev. 2009); *SEC v. Cope*, No. 14-CV-7575, 2021 WL 653088, at *3 (S.D.N.Y. Feb. 19, 2021) ("Under these provisions, a court may impose a civil penalty of up to 'the gross amount of pecuniary gain' to a defendant, which may be higher than the defendant's net profits contemplated in *Liu*.").

The SEC calculates that Griffithe spent $1,560,960.95 of investor funds on cars and his other businesses; deposited $824,364.16 into his own accounts; and spent $497,214.80 on expenses and the Ponzi-like scheme, for a gross total of $2,882,539.91. *See* Mot. at 6. While the SEC deducted expenses to reach its proposed penalty amount, the Court views Griffithe's actions to be so deceitful and harmful that they merit a more substantial civil penalty. Accordingly, the Court imposes a civil penalty of the full gross amount, $2,882,539.91, on Griffithe.

Russell argues that civil penalties against him are unwarranted due to his losses and lesser degree of scienter than his co-defendant. Russell Opp'n at 11-12. However, Russell's wrongful conduct resulted in substantial harm to investors who trusted his business with their money, and a penalty is in the public interest to help recover some of his investors' losses. Nevertheless, the Court finds the SEC's suggested penalty to be unduly large for Russell's level of culpability in the scheme, which was considerably less than Griffithe's. Griffithe

spearheaded the Ponzi-like scheme, was the link between investors and SMRB, and spent over a million dollars from investors funding his other ventures and buying himself luxury cars. In contrast, Russell spent approximately half of the investor funds he received on legitimate business expenses for SMRB.

Russell's disgorgement amount is approximately 7.6 times smaller than Griffithe's disgorgement. However, the SEC's requested penalty for Russell is only 5 times smaller than the Griffithe's court-ordered penalty. The Court finds it appropriate that the penalty amounts reflect the same proportionality as the disgorgement amounts. As such, the Court orders a penalty from Russell 7.6 times smaller than Griffithe's penalty, for a total of $378,888.93.

## IV. DISPOSITION

For the foregoing reasons, the Court GRANTS the SEC's Motion. Defendant Griffithe shall pay disgorgement of $2,093,336.67, together with pre-judgment interest of $336,194.77. Griffithe is also ordered to pay a civil penalty of $2,882,539.91, for a total of $5,312,071.35. Defendant Russell shall pay disgorgement of $275,153.90, together with pre-judgment interest of $44,190.38. Russell is also ordered to pay a civil penalty of $378,888.93, for a total of $698,232.56.

DATED: November 18, 2021

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE